IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE E. RODRIGUEZ,<br><br>        Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, SCOTT R. FRAKES, Director; DIANA SABATKA-RINE, Deputy Director; MICHAEL ROTHWELL, Deputy Director; and WAYNE CHANDLER, Mental Health Clinical Program Manager;<br><br>        Defendants. | 4:17CV3004<br><br>**MEMORANDUM AND ORDER** |

Plaintiff filed a Complaint on January 12, 2017. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 6.) As of April 10, 2017, Plaintiff paid his full initial partial filing fee. (*See* Docket Sheet.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner confined at the Lincoln Correctional Center in Lincoln, Nebraska. (Filing No. 1 at CM/ECF p. 1.) He sues the Nebraska Department of Correctional Services, Director Scott R. Frakes, Deputy Director Diane Sabatka-Rine, Deputy Director Michael Rothwell, and Mental Health Clinical Program Manager Wayne Chandler. (*Id.* at CM/ECF pp. 1-2.) Plaintiff alleges that Defendants have denied him access to programming (anger management, residential drug treatment, and sex offender treatment) prior to his first parole

eligibility date[1] in violation of due process and state law. (*Id*. at CM/ECF pp. 4-6.) Plaintiff fears that lack of programming will "force" his civil commitment as a sex offender. (*Id*. at CM/ECF p. 5.) He asserts that his needed programming is available at the Omaha Correctional Center, where Defendants refuse to transfer him because of his sentence structure. (*Id*. at CM/ECF pp. 6, 8.) Plaintiff claims that he suffers from insomnia, mental anguish/trauma, high blood pressure, acid reflux, and depression as a result of Defendants' actions. (*Id*. at CM/ECF p. 5.) He seeks monetary damages and for immediate transfer to the Omaha Correctional Center. (*Id*. at CM/ECF p. 6.)

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[1] His parole eligibility date is not until August of 2020, and his next parole board review date is in July of 2017. (*See* Filing No. 1 at CM/ECF pp. 12, 24.); http://dcs-inmatesearch.ne.gov/Corrections/InmateDisplayServlet?DcsId=57613

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

#### A. Sovereign Immunity

Plaintiff does not specify the capacity in which Defendants are sued. Where a plaintiff fails to "expressly and unambiguously" state that a public official is sued in his individual capacity, the court "assume[s] that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir.

3

1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary damages against state employees. Plaintiff's claims for monetary relief against Defendants in their official capacities are barred by the Eleventh Amendment.

## B. Fourteenth Amendment Due Process Claims

Liberally construed, Plaintiff alleges Defendants have denied him due process of law in violation of the Fourteenth Amendment. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (quotations omitted).

"The general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808 (finding that termination from a drug treatment program that was mandatory for parole, but discretionary with prison officials, was not outside of the punishment originally imposed). A state-created liberty interest arises when a statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Morrissey v. Brewer*, 408 U.S. 471 (1972). A state-created liberty interest also

4

arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

First, there is no liberty interest in parole, or even the *possibility* of parole, arising from the Due Process Clause. *See Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Nebraska Penal & Corrections*, 442 U.S. 1, 9–11 (1979)). Second, Plaintiff has no constitutional right to be housed in any particular prison or to receive a particular classification. See *Olim v. Wakinekona*, 461 U.S. 238, 245, (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Finally, the court notes that Plaintiff is correct, Neb. Rev. Stat. § 83-1,110.01 (West) does state, "the department shall provide the [committed] person with adequate access or availability to mental health therapy prior to the first parole eligibility date of the committed person." However, Plaintiff's first parole eligibility date is not for another three years and, in any event, taking advantage of self-improvement opportunities is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83–1,114(2) (West). Failure to complete a personalized program plan may be considered by the Nebraska Board of Parole as a factor in its decision, but denial of parole on those grounds is not mandatory. Neb. Rev. Stat. § 83–1,107(1)(b) (West).[2] *See, e.g.*, *Chae v. Rodriguez*, 2013 WL 5423069 (D. Neb.

---

[2] Further, the Nebraska Supreme Court has determined that Nebraska state law does not create a "protected liberty interest in obtaining sex offender treatment while still incarcerated," nor does Nebraska state law require sex offenders to obtain treatment prior to release. *S.C. v. Mental Health Bd. of the Fifth Jud. Dist.*, 810 N.W.2d 699, 703-04 (Neb. 2012) ("As noted, § 71–1202 states that "[i]t is the public policy of the State of Nebraska that dangerous sex offenders be encouraged to obtain voluntary treatment," but that language is merely suggestive. It does not create a liberty interest of which S.C. can claim he was deprived."). Failure to complete sex offender treatment also does not lead to any "forced" civil commitment. To seek civil commitment, the State needs to prove that a sex offender is a *dangerous* sex offender before a mental health board. *Id.* at 705 (emphasis added). *See* Neb. Rev. Stat. § 83-174.01 (West) (definition of dangerous sex offender).

2013) (unpublished), *affirmed*, 570 Fed.Appx. 623 (8th Cir. 2014) (unpublished) (affirming dismissal on initial review of similar allegations).

In short, Defendants still have time to provide Plaintiff with programming prior to his first parole eligibility date, but nevertheless, Plaintiff does not have a liberty interest in receiving programming prior to then. In fact, even if Defendants never provide Plaintiff programming, he will have to serve out the remainder of his original sentence without any change in the conditions of his confinement – neither a violation of the Due Process Clause or "atypical or significant" in relation to ordinary prison life. Alternatively, even if Defendants do provide him programming, there is no guarantee that Plaintiff will successfully complete it nor that it will guarantee his release. In other words, Plaintiff's access to programming will not "inevitably affect the duration of [his] sentence." Plaintiff's due process claims against Defendants will be dismissed for failure to state a claim upon which relief may be granted.[3]

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims for monetary relief against Defendants are dismissed with prejudice as barred by the Eleventh Amendment.

2. Plaintiff's remaining claims against Defendants are dismissed with prejudice for failure to state a claim upon which relief may be granted.

3. The court will enter judgment by separate document.

---

[3] To the extent Plaintiff asserts Defendants failed to follow state procedure in violation of due process, a federal court will not inquire into whether "state officers follow state law." *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[The plaintiff's] only argument is that the state failed to follow its own procedural rules and thus failed to afford him the due process of law mandated by the Constitution. But, as we have stated above, the Due Process Clause does not federalize state-law procedural requirements.").

Dated this 16th day of May, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.